## MARSHALL PALMER v. THE STATE.

No. 2613.   Decided June 25, 1913.

Rehearing granted October 22, 1913.

**1.—Robbery—Charge of Court—Words and Phrases.**

Where, upon trial of robbery, the court properly applied the law in his charge to the jury upon the different phases of the statute under the allegations of the indictment, there was no reversible error on that ground, and the criticism that the court failed to submit in connection with the word, "fear," the other clause, "of life or bodily injury," was not well taken.

**2.—Same—Sufficiency of the Evidence.**

Where, upon trial of robbery, the evidence sustained the conviction, there was no error.

**3.—Same—Charge of Court—Defensive Theory—Rehearing.**

Where, upon motion for rehearing after an affirmance of the judgment, it appeared that the court failed to instruct the jury that if they should believe defendant's testimony or had a reasonable doubt of it, they should acquit him, and there was testimony that the defendant did not commit the offense, the same was reversible error.

**4.—Same—Money Won at Cards—Definition of Robbery.**

Even where the money won under the rule of the game at cards had been taken possession of by the party winning same and the money was then grabbed or taken without any violence by the use of arms, it will not be robbery, but theft. Following Johnson v. State, 35 Texas Crim. Rep., 140.

Appeal from the District Court of Chambers. Tried below before the Hon. L. B. Hightower.

Appeal from a conviction of robbery; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*R. J. McMurray* and *Stevens & Stevens,* for appellant.—On question of the court's charge: Powell v. State, 60 Texas Crim. Rep , 201, 131 S. W. Rep., 590; Williams v. State, 12 Texas Crim. App., 240; Kimble v. State, 12 id., 420; Carr v. State, 55 Texas Crim. Rep., 352, 116 S. W. Rep., 591; Fannin v. State, 51 Texas Crim. Rep., 41, 100 S. W. Rep., 916; Glenn v. State, 49 Texas Crim. Rep., 349.

*C. E. Lane,* Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—Appellant was convicted of robbery, his punishment being assessed at five years confinement in the penitentiary.

This record is before us without bills of exception, and the matters presented are found in the motion for new trial. The charge is criticised because it instructed the jury that if they should believe that an assault was made by appellant upon John Henry Burton, the party who is alleged to have been robbed, and then and there by violence and putting in fear the said Burton did fraudulently take from the person of said person, without his consent and against the will of the said Burton, the money described, or part of it, he would be guilty of robbery, in that the law is that the assault or violence and putting in fear must put the alleged injured party in fear of life or bodily injury, hence the court erred in not properly defining the law to the jury. Another ground alleged is, the defendant having shown that Burton had taken $5 from him and that all the defendant did was to pick up $5 from the table where the parties were gambling, which Burton had taken from him, defendant, hence the court erred in not instructing the jury upon this phase of the case and informing the jury that it would not be robbery

for the defendant to recover his own specific property by violence from the said Burton.

The court charged the jury that if appellant unlawfully made an assault upon the person of John Henry Burton, and then and there by putting in fear the said Burton of life or bodily injury, did then and there fraudulently take from the person and possession, etc., $50 in money, or did so take any sum of money with the intent to appropriate the same to the use and benefit of him, etc., he would be guilty as charged. This is correct and not subject to criticism. The court also charged the jury that if appellant did unlawfully and wilfully make an assault upon the person of Burton, and then and there by violence and putting in fear the said Burton did fraudulently take from the person and possession of the said Burton, without his consent, etc., $50 or any sum, with intent to appropriate it he would be guilty. The facts for the State show, by the witness Mosely: "He (referring to Burton) was robbed in the morning as nigh as I can come to it about 8 or 9 o'clock. I was right in the tent lying down on a cot when it happened. The first thing that attracted my attention, I was lying with my back to the boys and I heard one say, 'Feel him and see if he has got a gun,' and at that time I turned over and looked, but it was not that man that was feeling of him, it was another. This man here had a pistol holding it right to the fellow that this other man was feeling of. He felt over him and said, 'No, he ain't got no gun,' and when he said that this fellow, if this man is the same one—he favors him, but I couldn't swear that it is the same man. The other fellow was the one that was going through him, but this one had his gun pointing toward him. When they got through the bright one walked on out and went on down the canal. Just as soon as they got outside, this John Henry Burton reported that they had robbed him of $50; he reported it and they went to take this fellow, and they overtaken this man they called Marshall Palmer. When they started after him they started right down north-east from the camp, as nigh as I can say. I stepped outside the tent to see what they was going to do, and Marshall Palmer was way down the canal, he was walking at first, but after they started after him he struck a trot right down the side of the canal. Yes, sir; there was another fellow there, but they called the bright-looking one Marshall Palmer. This man here seems to be brighter than he was. I did not see him when they brought him to jail, but I saw him when I come here as a witness. This Burton said that they had robbed him of $50. This fellow reported to a white man that Marshall Palmer had robbed him of $50, said 'He has taken $50 away from me.' No, sir; they didn't catch him they say. I don't know why they didn't catch him. I know why they say they didn't catch him, but don't know why. I did not go with them, a white man went with this John Henry Burton, but he is not the man that got killed, it was a different man that got killed. They didn't get Marshall Palmer. This happened along about the first

of spring when I was out there; it happened in 1909, in Chambers County, State of Texas." The cross-examination followed the examination in chief and the witness stated he did not see the parties take any money from Burton and could not swear they did. He denied there was any gambling table or cot used for that purpose at the time the money was taken, and he further says he would not swear positively that this was the man, because he had never seen him previously but says he favors him. The whole testimony of this witness is to the effect that while he would not swear positively to it being defendant, yet he was reasonably certain that it was he; he says he looks like the same fellow now and he is satisfied it is he. He further states: "When I turned over I saw two men, one had a pistol and the other was searching another man; when they went out Burton said he had been robbed of $50."

The sheriff, Mr. LaFour, testified that on account of this matter he went out to the camp where these people were and where this matter is said to have occurred; that he failed to find the defendant; used diligence to find him as usual under such circumstances by trying to trace him in his flight; that he made trips to several places, and finally located him at Little Rock, Arkansas, where he was arrested. It seems that Burton was a transient fellow and they never did find him, or any of the parties who were present at the time, except the witness Mosely. He mentioned where he had located some of them or understood them to be, but failed to get them as witnesses as they were out of the State. He further states on cross-examination, that while he was attempting to arrest appellant he had two warrants, one for highway robbery and the other for murder. "I did not know John Henry Burton, did not know any of them out there, never seen them, they just come in there to do some public work. I could not swear to this jury that Marshall Palmer robbed John Henry Burton, I wasn't there, nor could I tell this jury that Marshall Palmer got $50 from Burton."

Defendant took the stand in his own behalf, and said the way the matter came up was on this wise: "This fellow was dealing a banking game, he was running a gambling house, and I bet him $5 on the deuce against the seven of hearts and he turned the seven of diamonds in the door. The seven pops out on the deck. I bet on the deuce and had the best of it and he turned the seven in the door again and he took my $5 and threw it over in his game. I said, 'You don't win that because I have got two sevens out on the deck and the last seven is in the deck. He kept my $5 and threw it over in the game. I picked up the $5 and got my coat and pistol and walked on out and up the canal. Two white men rode out on horses and started to shooting at me with Winchesters, they both had Winchesters. I tried to jump across the ditch and got on the far side of the canal, and they were shooting at me and I shot back. Henry Burton run a gambling house, and we all gambled all night principally, had a regular table there, and John Henry Burton run it." There is a lot of details gone into on cross-examina-

tion of the defendant. Appellant stated he had known Burton in Louisiana, at Opelousas. "I come from Memphis to Little Rock. I run to Memphis because I was afraid of those men. I hadn't done nothing. I don't know who got killed out there on the canal, it was a white man. I ain't killed nobody but it was laid on to me. I got shot and have a wound here to show I got shot in the trouble, but I did not kill anyone, they killed him shooting at me. I must have shot six or eight times, I had nine shells and shot them up and then picked up and run. Just prior to the time I left the tent there where me and John Henry Burton was, me and him had been gambling. I didn't rob him, I worked for that $5. . . . I started on down the canal and did not strike a trot until these fellows began shooting at me. They rode up to me and said, 'Stop and give me that pistol,' and I said, 'What pistol?' I said, 'No, I can't give it up.' They said, 'Give us that money,' and I said, 'That is my money,' and they said, 'Didn't you take some money from Burton?' and I said, 'No.' They wanted me to give the money up. I never stole any money from anybody in my life. They told me to stop and give them the pistol, but I did not give it to them. I don't know Charles Dildone, and I don't know whether he was there or not. The reason I run off and left my wife was because she couldn't follow me, she couldn't keep up with my gaits, not at that time she couldn't. I stopped at Beaumont that night, but I did not see Mr. Giles, the sheriff, hunting for me that night. I don't know whether they went to my home or not. I didn't stop at home, I stopped in town. I stayed there until next morning and then went to Shreveport, then to Vicksburg, then to Memphis, then to Cairo, then to St. Louis, then to Kansas City, then to Omaha, then to Denver, then to Pueblo, then to Oklahoma, then to Glover, then to Phoenix, then to El Paso, then back to Denver, then to McAlister, Oklahoma, then from there I think I went to this place Calvin, Oklahoma, that is thirty-three miles from there, then to Memphis, then to Little Rock and got arrested there. When I left from over there I knew that one man had been killed. I was a stranger in the place, and the man that was killed was a white man." This is in substance the case.

We are of opinion that the contentions of appellant present no such error, if error at all, that would require a reversal. The court under the allegations of the indictment was authorized to charge upon both phases of the statute and did so. Applying the law to the case the court instructed the jury as follows: "Under this definition you are instructed that if you believe from the evidence, beyond a reasonable doubt, that the defendant, on or about the 7th day of March, 1909, in the County of Chambers and State of Texas, as alleged in the indictment, did unlawfully and wilfully make an assault upon the person of said John Henry Burton and then and there by putting the said John Henry Burton in fear of life or bodily injury, did then and there fraudulently take from the person and possession," etc., they would convict. This is not subject to the criticism contained in the motion for new trial, that

the court failed to submit in connection with the word "fear" the other clause,—"of life or bodily injury." This was one of the allegations of the indictment. The court properly applied the law to that phase of the indictment. Charging the other phase he instructed the jury, that if defendant made the assault contemplated by the statute upon the person of John Henry Burton and then and there by violence and putting in fear the said John Henry Burton did fraudulently take from the person and possession, etc., he would be guilty. We suppose the criticism is directed against this portion of the charge. If so, we are of opinion it is without merit. The indictment also charges that appellant did "by violence" commit the offense of robbery. The court was submitting that allegation in the indictment which was justified by the statute. The court was correct in submitting both theories of the State. The evidence would justify the court in submitting both allegations, and it was not necessary in the latter instance where "violence" was charged to instruct the jury with reference to putting "in fear of life or bodily injury." We are satisfied that the court properly submitted these issues to the jury, and the criticisms contained in the motion for new trial are not legally justified.

It is insisted the evidence is not sufficient. We are of opinion, however, this contention is not well taken. Mosely did not see appellant and his confederate take the money out of the pocket of Burton, but he did see one of them holding a pistol against him or right at him while the other examined him for a weapon, and finding he was not armed, went through his pockets, and they immediately fled, Burton remarking immediately they had gotten $50 from him, whereupon giving information to this effect the officers followed appellant and engaged in an exchange of shots in which one of the pursuing party was killed. Appellant shows he got $5, but claims he got it under other circumstances than those detailed by Mosely. That appellant got as much as $5 he admits, and so testifies, but claims he got it under circumstances different from those detailed by the witness Mosely. All the testimony shows and the defendant testifies that he immediately fled and would not surrender to those who were following him, but that he continued his flight, as detailed in the testimony, until arrested in Little Rock. Under all the facts we are of opinion this evidence is sufficient to justify the jury finding the verdict rendered.

The judgment will therefore be affirmed.

*Affirmed.*

DAVIDSON, JUDGE.—At the last term of the court the judgment herein was affirmed. During vacation and within the time allowed by law motion for rehearing was filed alleging error in the judgment of affirmance.

The contention is, that under the facts introduced by the defendant, he was entitled to a charge that if the jury should believe his testimony, or there was a reasonable doubt of it, that he was entitled to an acquittal

as against the charge of robbery. It is unnecessary to restate the facts in this opinion as they are fully stated in the original opinion relating to this phase of the record. The judgment evidently was affirmed on the theory that appellant's contention related more to the sufficiency of the evidence, in view of what he had testified, than to the failure of the court to submit that issue. Upon a careful inspection of the motion for new trial we have concluded that the judgment of affirmance was erroneous on account of the failure of the court to instruct the jury that if they should believe defendant's testimony, or had a reasonable doubt of it, they should acquit him of robbery. The writer of this opinion wrote the opinion affirming the judgment. If the testimony of appellant is to be credited he did not commit the offense of robbery, and may not have been guilty of any offense. If, under the rules of the game they were playing, the banker had won the money, and it had passed into his hands under the rules of the game, and appellant had subsequently taken the money by force or violence, a case of robbery would be complete under the cases of Blain v. State, 34 Texas Crim. Rep., 448, and Carroll v. State, 42 Texas Crim. Rep., 30. But under the facts stated by appellant he did not admit losing the money, but denied it, and claimed that he won the money at the time the banker in the game took the money and placed "it in the game," as the witness calls it. It has been held that even where the money had been won under the rules of the game and taken possession of by the winning party, and the money was then grabbed or taken without any violence or the use of arms, it would not be robbery but theft. Johnson v. State, 35 Texas Crim. Rep., 140. It is only where the money is taken by violence or by force of arms that robbery is constituted. Under the facts of this case we are of the opinion we were in error in affirming the judgment. Therefore, the affirmance is set aside, and the judgment is reversed and the cause is remanded.

*Reversed and remanded.*